**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**ANDRES E. BOURGET**

    **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　**Case No.  8:13-cv-2841-T-30TBM**

**CAROLYN W. COLVIN, Acting
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits and Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

A.

Plaintiff applied for disability benefits and Supplemental Security Income in October 2010, alleging disability as of September 10, 2010, by reason of chronic pain in shoulders and low back, problems with his eyes, and sleep apnea.  Plaintiff's applications were denied originally and on reconsideration.

Plaintiff next received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  He was represented at the hearing by counsel and testified on his own

behalf. Plaintiff was forty-seven (47) years of age at the time of his administrative hearing. He is 6'1" tall and weighed 224 pounds. Plaintiff has a high school education and some college. Plaintiff reported past relevant work as a truck driver and mover. In essence, Plaintiff testified that he can no longer work because of pain. He sustained an injury to his right shoulder in October 2007 in a motor vehicle accident. He describes back pain every day, most of the day at a level seven. Two or three times a week, it goes to level ten for two to four hours. The back pain radiates into both legs and causes numbness. He takes medications for the pain but it makes him drowsy, sleepy, and lessens his concentration. He uses a TENS unit three to four times daily. He also uses a cream for pain. He describes his injury as a broken tendon in his right shoulder. He underwent surgery but that did not help. He gets severe headaches two to three times a week which make him ill. He can see okay with glasses, but he is losing hearing and memory. He has sleep apnea and sleeps with a CPAP machine. He has slight balance problems. His right hand goes numb. He gets tired during the day and naps.

  Plaintiff testified he could not lift and carry a gallon of milk with one hand. He can walk, stand, and sit in one position for about twenty minutes tops. He can reach overhead with his left arm and raise his arms straight out slowly. He describes the mobility in his right arm as limited, incapable of repetitive movement. He can pick up small objects. He drives his daughter to school but experiences pain and numbness. He tries to share in the chores around the house, but sweeping, mopping, cleaning, and cooking take a long time and then he has to take a pill and lie down. He takes care of his personal needs. He stopped going to church because of the pain and postural issues. (R. 30-59).

2

Plaintiff's wife, Mora Bourget, testified that her husband has gone through a lot of changes since 2007. He was very active and with a good work history. He is in pain all the time. His medications make him dizzy, tired, sleepy, and really grumpy. As she describes him "he's not there" and his medications make him unable to focus and concentrate. He lies down five to six hours a day and he falls asleep. He is limited in walking, lifting, and sitting. He has shoulder pain, headaches, and numbness in his hands. He also has memory issues. (R. 59-65).

Theresa Manning, a vocational expert ("VE"), testified on a hypothetical assuming a person of Plaintiff's age, education, and work experience capable of a limited range of light exertional work. With limitations in pushing and pulling with the arms, overhead reaching with the right arm, climbing, balancing, stooping, kneeling, and crouching, she opined such person could not do Plaintiff's past work but could perform jobs such as car rental driver, delivery driver, and production assembler. If such person could only sit for fifteen to twenty minutes, then the delivery driver jobs would be eliminated and the car rental driver jobs would be reduced by 50%. Employers would not allow someone on [these type] medications to hold such jobs and the driver jobs would be eliminated if focus and concentration would be affected 10% of the time. Absences two to three days a month, the need for unscheduled breaks, and the need to lie down or recline would eliminate all jobs, the VE testified. (R. 67-72).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed herein as necessary.

By his decision of July 3, 2012, the ALJ determined that while Plaintiff has severe impairments related to status post arthroscopy and subacromial decompression of right shoulder, bursitis of the right shoulder, chronic low back pain, degenerative disc disease of the lumbar spine with disc bulging, lumbar radiculopathy, and mild sleep apnea, he nonetheless had the residual functional capacity to perform a limited range of light exertional work. Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 13-21). The Appeals Council denied Plaintiff's request for review (R. 1-3), and the ALJ's decision became the final decision of the Commissioner.

B.

Entitlement to Social Security disability benefits and Supplemental Security Income payments requires the claimant establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would

4

accept as adequate to support a conclusion." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (quotations omitted). The Commissioner must apply the correct law and demonstrate that she has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

It is, moreover, the function of the Commissioner and not the courts to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Moore*, 405 F.3d at 1211.

In sum, the scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

C.

Plaintiff herein raises two claims on this appeal. First, he complains that the ALJ erred in assessing his credibility and in discrediting his pain and subjective complaints.

Second, he argues that the ALJ erred in assessing his residual functional capacity ("RFC"). (Doc. 15).

More particularly, by his first claim he contends that the ALJ's stated reason for discounting his credibility was a boilerplate finding that his statements were credible only to the extent that they were consistent with an RFC for a reduced range of light work.  Beyond that statement, Plaintiff argues that the stated reasons for rejecting the testimony were incorrect and inadequate.  Here, the ALJ cited Plaintiff's daily activities, the lack of corroboration in the medical records as to the side effects of the medications, and his generally successful treatment to discredit his claims of disabling symptoms.  Plaintiff urges that, contrary to the findings of the ALJ, the record shows that his shoulder surgery needs to be revisited, the side effects of his medications are documented in the record, and the ALJ should not have relied upon his daily activities related to personal care, driving, and efforts to seek employment to discount his testimony.  Thus, he asserts, the decision should be reversed and remanded.  *Id.* at 3-6.

By his second claim, he argues that the ALJ's RFC assessment fails "to include all [his] limitations and to their proper degree resulting from his impairment, and from side effects of his medications (somnolence, palpitations, inability to concentrate, etc.) . . . . Therefore, by failing to include and consider the Claimant's impairments and side effects of his medications, along with resulting limitations as documented in the medical evidence and testimony of record, the ALJ erred in determining [his] RFC."  *Id.* at 7-8.

In response, the Commissioner urges that substantial evidence supports both the RFC assessment for a reduced range of light exertional work and the ALJ's credibility finding.

6

The ALJ properly cited to the opinion of Robert Steele, M.D., a state agency doctor, Plaintiff's medical records, and Plaintiff's daily activities in reaching his conclusions. By the Commissioner's review of the medical record and Plaintiff's own testimony, there is adequate support for the ALJ's conclusions, including those concerning the side effects of medications. Moreover, the Commissioner notes that Plaintiff fails to discuss any medical evidence or demonstrate how it is inconsistent with the ALJ's findings. In sum, the Commissioner argues that the evidence supports the ALJ's conclusions. (Doc. 16).

In this Circuit, subjective complaints such as pain, fatigue, or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Under this standard, the claimant must show evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See id.; Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Where such showing is made, the Regulations dictate that the ALJ then evaluate the intensity and persistence of the symptoms to determine how such limit the claimants capacity for work. 20 C.F.R. §§ 404.1529(c); 416.929(c). Relevant factors in this consideration include the objective medical evidence, evidence of factors that precipitate or aggravate the symptoms, medications, and treatments available to alleviate the symptoms, how the symptoms affect daily activities, and past work history. *Id*. If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his decision. *Dyer*, 395 F.3d at 1210 (citing *Foote v.*

7

*Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)). Such reasons must be supported by evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1562 (citing *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986)).

After reviewing the decision in light of the whole of the medical record, I conclude that the ALJ's credibility finding and RFC assessment are made consistent the applicable standards and are supported by substantial evidence. Moreover, Plaintiff fails to demonstrate from the record any support for his conclusory arguments to the contrary.[1]

Regarding the credibility conclusion, while the ALJ did make the conclusory finding cited by Plaintiff, the finding is properly considered in light of the ALJ's evaluation of the medical and other evidence. The decision is fairly read to reflect the ALJ's conclusion that Plaintiff had impairments which could cause him symptoms but not to the extreme level he claimed. As the decision reflects, although Plaintiff alleged an onset date in September 2010, the ALJ reviewed the evidence dating back to a motor vehicle accident in 2007. A review of

---

[1] The Court's Scheduling Order provides that the Plaintiff must identify "with particularity the discrete grounds" upon which the decision is challenged and any such challenges "must be supported by citation to the pages of the record relied upon when discussing the pertinent facts, medical evidence, and opinion evidence and by citation to governing authority that supports each challenge. Any contention for which these requirements are not met is subject to being disregarded for insufficient development and denied without further consideration." (Doc. 14). On the first claim, Plaintiff cites but a single doctor's records and fails to give those records a complete read. On the second claim, he fails to cite any medical support for the claim that the ALJ failed to properly assess his RFC.

those records supports the ALJ's finding that treatment notes between 2007 and 2009 revealed care for shoulder and low back pain. The objective evidence shows an unremarkable cervical spine and broad-based disc bulges at L3 through L5 without evidence of spinal stenosis. A right shoulder MRI revealed a partial tear of the distal supraspinatus tendon and subacrominal bursitis, without evidence of fracture or impingement. Treatment was by way of medication, injections and physical therapy. By October 2009, Dr. Scott Goldsmith, M.D., a treating doctor, found Plaintiff had made great improvements and would be seen on an as needed basis thereafter. (R. 261).

Turning to the relevant period under review, the ALJ stated:

> As for the relevant period, the claimant has alleged low back pain radiating to the lower extremities. A progress note from Deborah F. Shultz, M.D., in June 2011 also indicates chronic pain syndrome and lumbar disc disorder (Exhibit 11 F). In July 2011, x-rays of the thoracic and lumbar spine showed maintained disc height and no evidence of instability. An MRI of the lumbar spine in August 2011 was unremarkable, with no significant degenerative disc disease. In October 2011, an examination at Florida Spine Institute reflected normal posture, only mild paraspinal and sacroiliac tenderness, normal and symmetric reflexes, and full *5/5* motor strength in the lower extremity. Robert J. Kowalski, M.D. provided an assessment of lumbago and thoracic/lumbosacral neuritis/radiculitis (Exhibit 7F). Progress notes from George Sidhom, M.D., Brandon Pain Clinic, between January and March 2012 indicate pain management, including medication and lumbar epidural steroid injections (Exhibit 9F, 10F).
>
> In terms of the right upper extremity, he is also not as limited as alleged. Progress notes from Deborah F. Shultz, M.D., between August and November 2010 indicate shoulder impingement and joint pain (Exhibit 4F). In December 2010, the record reflects a right shoulder arthroscopy and subacromial decompression (Exhibit 5F). Progress note from Dr. Goldsmith between March and May 2011 indicate

9

> discomfort reaching overhead, but the claimant denied any arm pain at less than 90 degrees (Exhibit 8F). An MRI of the cervical spine in June 2011 was normal. In October 2011, a progress note from Florida Spine Institute indicates complaints of numbness and tingling in the right upper extremity. An examination of the upper extremities reflected mild tenderness in the right trapezius area, decreased sensory findings in right ring, and full (5/5) motor strength (Exhibit 7F).

(R. 17-18).

My review of the treatment notes from Drs. Deborah F. Shultz (R. 354-362, 447-449), Robert J. Kowalski (R. 430-31), and Scott Goldsmith (R. 364-421, 434-436) reveals considerable support for the ALJ's credibility conclusion. For instance, Dr. Kowalski noted normal findings on exam in October 2011, with 5/5 upper and lower extremity strength. By his conclusion, Plaintiff had diffuse complaints of pain; his imaging showed mild degeneration; and conservative therapy with pain management was advised. (R. 430). Notes from Dr. Shultz also reported generally normal findings with some reduced range of motion in the right shoulder. By her advice, he should seek physical therapy. (R. 358). Neither doctor suggested findings of severely limiting impairments and neither imposed any limitations and, to the contrary, suggested he obtain physical therapy. Nothing from the notes from Dr. Goldsmith or the pain management doctors, Drs. Sidhom and Tapia, is to the contrary. In sum, while Plaintiff continued to complain of pain, the findings by these doctors simply need not be read to support the debilitating limitations he was claiming.

Moreover, the ALJ's citation to Plaintiff's daily activities was not improper and surely no basis for a remand in light of the whole of the decision. Here, the ALJ stated:

> The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of

> disabling symptoms and limitations. At one point or another in the record, he has reported the following daily activities: performing personal care, driving, and applying for employment. It is also noted that the claimant informed the undersigned of his intention to begin part-time employment as a greeter at Home Depot (Exhibit 19E).

(R. 18).

In my view, such observation was not inappropriate and, when read in the context of the ALJ's full rationale for concluding Plaintiff was less than fully credible, no cause for awarding relief.

As for the claim that the ALJ erred in finding that the medical records did not support his claim of side effects of his medication, a review of the record as a whole supports such conclusion. While there are a couple of references in Dr. Sidhom's records to Plaintiff being allergic to Ultram because of somnolence (R. 335, 338, 346) and a reference to Oxycodone causing palpitations (R. 346), the remedy was a change in medicines. In January 2010, it is noted that "[w]ith this medicine therapy, social and physical functional performance have been adequately maintained. There is no evidence of medication induced side effects." (R. 340; also 342, 344). In any event, I can find nothing in the record to support the claims made by Plaintiff in this regard.

Finally, I find from the medical record that Plaintiff did well under treatment. While he continued to complain of shoulder pain and occasional back pain, as determined by the ALJ, the objective and clinical evidence of such conditions in no way suggests they were as limiting as claimed.

11

In sum, the ALJ applied the proper standard and adequately explained his reasons for discounting the subjective claims. Plaintiff is not entitled to relief on this claim.

As for the alleged error in assessing his RFC,[2] I again find that Plaintiff demonstrates no reversible error from the record. Here, the ALJ assessed an RFC for light exertional work with some limitations in pushing and pulling, climbing, balancing, stooping, crouching, kneeling, and climbing. (R. 16). Such assessment was based on a review of the whole of the record. As discussed above, the clinical findings and objective evidence of his impairments do not support the claim for debilitating functional limitations. On the contrary, the evidence revealed a mild degenerative condition in the back and right shoulder with complaints of pain which doctors addressed by way of medications and physical therapy.[3] As set forth above, Plaintiff's subjective claims as to the limiting effects of his pain and side effects from medications is substantially undermined by the evidence. Under the applicable standard, it is

---

[2]Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 416.945(a)(1); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Lewis*, 125 F.3d at 1440. If a claimant can still do the kind of work she has done in the past, then the regulations require that she be found not disabled. At this stage of the evaluation process, the burden is on the claimant to show that she can no longer perform her past relevant work. *Jackson v. Bowen*, 801 F.2d 1291, 1292 (11th Cir. 1986). In evaluating a claimant's residual functional capacity, the ALJ is obliged to consider all of the claimant's impairments, including subjective symptoms such as pain. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The final responsibility for deciding a claimant's RFC is with the ALJ. 20 C.F.R. §§ 404.1527(d), 416.927(d).

[3]Plaintiff did undergo a right shoulder arthroscopy and subacromial decompression in late 2010. Follow-up notes from Dr. Goldberg indicate he underwent physical therapy and reported some improvement but continuing discomfort. By his note in January 2012, Dr. Goldberg was recommending rotator cuff repair. However, clinical notes do not reflect findings of severe limitations. (R. 364-68, 434-36).

the ALJ's duty to assess the RFC and while Plaintiff complains that the ALJ erred, he fails to show as much by any convincing evidence. His claim that the ALJ did not factor in his somnolence, palpitations, and inability to concentrate fails because the ALJ found good cause to discount the subjective claims. Again, the limited medical evidence does not support the argument.

As the decision reflects, after reviewing the medical treatment and Plaintiff's own claims, the ALJ further supported his RFC assessment by reference to the assessment by Dr. Steele, a nonexaming doctor. Thus, the ALJ stated:

> The residual functional capacity conclusion reached by the physician employed by DDS also supported a finding of 'not disabled.' In March 2011, Robert Steele, M.D., a State agency medical consultant, determined the claimant could perform light work with only frequent pushing/pulling with the right upper extremity, postural activities (only occasional climbing ladders, ropes or scaffolds), and overhead reaching with the right upper extremity (Exhibit 6F). This assessment was given considerable weight. The State agency medical consultants are experts in their particular field of expertise and familiar with our disability program and its evidentiary requirements. The residual functional capacity outlined above is consistent with the determination provided by Dr. Steele.
>
> In sum, it is reasonable to conclude that the combination of the claimant's impairments could have precluded her (sic) from performing very heavy, heavy, and medium exertion work activity. However, the evidence of record in its entirety supports a finding that the claimant can perform light work within the residual functional capacity outlined above. The residual functional capacity is also generally supported by Dr. Steele's March 2011 determination (Exhibit 6F).

(R. 19).

In these circumstances, where the opinion of the nonexamining doctor does not conflict with the opinions of any treating doctor, the ALJ may properly rely upon such opinion evidence.

Plaintiff makes no other effort to articulate the error and support this claim from the medical evidence. Nor does he show the assessment unsupported by substantial evidence. Thus, he is not entitled to relief on this claim.

D.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. The Clerk should be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
2nd day of December 2014.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6.

Copies furnished to:
The Honorable James S. Moody, United States District Judge
Counsel of Record